# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AMY PAULSHOCK,**

            **Plaintiff,**

**-vs-**                                        **Case No.  6:05-cv-1415-Orl-DAB**

**NNOVATION LEARNING GROUP, INC.,**
**THE NAVIGATOR SCHOOL, INC.,**
**ALTHA M. NEILSON[1], KENT R.**
**NEILSON,**

            **Defendants.**
_____

## MEMORANDUM OF DECISION

This cause came on for trial before the undersigned[2] on September 17, 2007.  For the reasons set forth below, the Court renders verdicts that Plaintiff take nothing from Defendants.

Plaintiff filed this action to recover unpaid wages from Defendants for her work at the Navigator School, a private school in Celebration, Florida, pursuant to the Fair Labor Standards Act of 1938 (hereinafter referred to as "FLSA"), 28 U.S.C. § 201 *et seq.*  Plaintiff filed her Complaint against Defendants on September 27, 2005.  Doc. 1.  Plaintiff seeks unpaid and overtime wages, claiming that she performed work for which she was not compensated while employed by Defendants Nnovation Learning Group, Inc. and the Navigator School, Inc. from February 7, 2003 to September 2004.  Doc. No. 1 at ¶¶ 4-6.  Plaintiff further alleges that Kent Neilson was in control of the terms and conditions of her work and was a statutory employer liable under the FLSA. Doc. No. 1 at ¶¶ 11-14.

---

[1]Plaintiff settled with Altha Neilson the morning of trial.  Doc. No. 98.  Thus, the Court does not address Plaintiff's claims against her.

[2]This case was originally assigned to District Judge Fawsett; following the parties' consent the case was reassigned to this Court on January 19, 2007.  Doc. No. 57.

Defendants deny Plaintiff is entitled to minimum wage or overtime because she has sued the wrong Defendants, who were not her employers, and because Plaintiff qualifies under certain exemptions to the FLSA.  In addition, Defendant Kent Neilsen argued he was not involved in the day to day operations and was not subject to the requirements of the FLSA as a statutory employer.

At trial, Plaintiff offered the testimony of herself and her husband and the testimony of Defendants Altha Nielsen and Kent Nielsen.  Based on this testimony and the exhibits admitted into evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

**FINDINGS OF FACT**

Plaintiff and her husband, along with another couple named Boyer, started the Navigator School in 2000, but did not incorporate as The Navigator School, Inc. ("TNS") until 2001.  Plaintiff's daughter attended the School on a part-time basis during 2003-2004.  Plaintiff seeks to recover wages for the period from February 2003 to June 2004.  Plaintiff worked at the school from July 2001 to September 2004 assisting the staff, doing advertising, running errands, planning and driving students to field trips, acting as a health aide, substituting for teachers, and as a preschool aide.  Plaintiff participated in interviewing and hiring teachers in February 2003, and she was asked to assist in resolving disputes among staff.  At one point, Plaintiff filled in for a science teacher for six to eight weeks, three hours per day.  The School was also very short-handed, so Plaintiff assisted Altha Neilson, who had taken over teaching the math class.

Plaintiff testified that her hours "varied" and she could not estimate them.  She often manned a booth at a Celebration farmer's market to hand out brochures and sell crafts made by the students.  She provided staff support or "whatever needed to be done," including substitute teaching on occasion.  Most of her substitute teaching was in the preschool.

-2-

At the time of TNS's incorporation in 2001, four individuals each held 25% ownership: Plaintiff, her husband, as well as Mr. Boyer and Mrs. Boyer.  The Paulshocks invited Altha Neilson to become Principal of the School in Fall 2002.  TNS continued to own and operate the School until a falling-out with the Boyers led to a transfer of ownership in February 2003.  The Boyers would only agree to transfer their 50% ownership in the School if the Paulshocks also transferred their ownership to someone else.  Although all of the documents transferring ownership were signed at the same closing in February 2003, the transfer of ownership was to be accomplished in two phases.  The second phase of the ownership transfer was achieved, unbeknownst to Kent Neilson.[3]

In February 2003, the first phase of the ownership transfer of TNS was accomplished; TNS was transferred to an entity wholly owned by the Neilson family called the nNovation Learning Group ("NLG").  The Neilsons originally created NLG to provide professional development online and it was owned in equal shares by Kent Neilson, his wife Tamara, and his mother, Altha Neilson[4].  However, at the February 2003 closing, a second set of documents were simultaneously signed – the second phase of the ownership transfer – which transferred partial ownership back to the Paulshocks, effective July 1, 2003; TNS's ownership was transferred from 100% in the wholly-owned Neilson entity NLG to The Navigator Learning Center, Inc. ("TNLC"), ownership of which was held by Plaintiff (16.6%), her husband (16.7%), and NLG (66.7%).  In this two-step process, ownership was transferred out of the Paulshocks' hands apparently to satisfy the Boyers, who agreed to relinquish control on the condition that the Paulshocks not remain owners; five months later, partial ownership was transferred back to the Paulshocks.

_____

[3]Mr. Neilson resided in Canada and the documents were signed by his mother Altha Neilson, the principal of the School and a one-third owner of NLG.

[4]Altha Neilson, a former principal at the school and another named Defendant, entered into a settlement agreement with the Plaintiff for $100 just prior to the start of trial.  *See* Doc. No. 98.

Following the sale of the school to TNLC in July 2003, Plaintiff became less involved in running the school. Plaintiff's husband, Craig Paulshock, is a full-time medical doctor and in his spare time "helped out" with the computers, collaborated on budgeting, and physical plant upkeep at the Navigator School. The leases for the School's location were held by NLG (instead of TNLC), but personally guaranteed by the Paulshocks during the relevant time period. Despite the transfer of ownership, the Paulshocks maintained a $100,000 line of credit secured by the School's assets, on which they were personal guarantors. Dr. Paulshock was Treasurer of the School.

Although the Paulshocks collectively owned only 33.3% of TNLC on paper as of July 2003, as Dr. Paulshock testified, the incorporating documents[5] were written such that the Paulshocks had equal voting power with NLG; a 70% majority vote was required, and being that the Neilsons had control of only 66.7% of the stock, the Paulshocks thus could "veto" any management decisions made by NLG or the Neilsons. Management decisions were made by the TNLC owners physically present in Celebration, *i.e.*, Altha Neilson, Amy Paulshock and Craig Paulshock, who would then would conference call to Kent Neilson in Canada.[6] Kent Neilson managed the technology. On the academic side, decisions were made by Dr. Altha Neilson as the School's Principal; she also signed the checks, although she was not responsible for the "business side" of the School's management – all of the shareholders were. Dr. Altha Neilson made recommendations for teachers' pay to Kent Neilson and Craig Paulshock who set the budget; she did not determine teachers' pay.

Dr. Paulshock testified that several times between September 2003 and May 2004, he discussed with Kent Neilson a proposal to pay Plaintiff an "honorarium," but Plaintiff was never paid any money, although she did receive health benefits of approximately $500 per month and free tuition

---

[5]The actual ownership documents were not introduced by either side at the trial.

[6]There was no testimony about any management role played by Tamara Neilson during the relevant time period.

-4-

for her child[7].  Plaintiff did not ask to be paid initially, but she did ask Altha Neilson later about getting paid.  Plaintiff testified that she was promised $12,000.

For his part, Kent Neilson testified that he never agreed to pay Plaintiff for her time at the school, which he perceived as a social situation for her; she would socialize rather than do any work. Moreover, he testified that Dr. Altha Neilson decided who to pay.

The parties cooperatively operated the school with Altha Neilson as School Principal, until around August 2004.  In August 2004, the Neilsons and the Paulshocks were trying to negotiate a sale of the TNLC stock to the Neilsons or NLG.  When negotiations broke down in mid-September 2004, Dr. Paulshock and Kent Neilson had a dispute over what Dr. Paulshock described as "exorbitant" payments to Kent Neilson for managing the School's information technology[8] and Dr. Paulshock's loss of access to the School's computer server.  The two had strong words, and Dr. Paulshock disconnected the server to "protect" it. Kent Neilson, who was residing in Canada[9], had no access for a brief period of time until it was reconnected by staff at the School.  Dr. Paulshock removed money from a School bank account.  The School's Principal, Altha Neilson, was worried Dr. Paulshock would remove assets of the school based on threats he had made, and she made the decision that the Paulshocks should be physically locked out and access codes changed; Kent Neilson concurred in the decision.  Following those actions – which the Paulshocks refer to as their "ouster" – they filed suit in state court in October 2004.[10]   The parties stipulated in the state court action that TNLC has

---

[7] Plaintiff testified that the other staff person at the School had a child attending for free.

[8] Kent Neilson testified that he charged $600 per month, or $50 per computer on the network, which was less than the $150 per computer he charged other customers.

[9] Kent Neilson did not move to Celebration, Florida from Canada until 2005, after the period in dispute.

[10] As of July 23, 2007, the state court entered an injunction making the Paulshocks receivers to run The Navigator School.

operated the school since February 7, 2003.  Def. Ex. 2.  Kent Neilson testified that he did not fire

Plaintiff, she voluntarily removed herself when the negotiations broke down in August-September

2004.

### CONCLUSIONS OF LAW CONCERNING THE FLSA

Plaintiff seeks to hold Defendants liable for violation of the minimum and overtime provision

of the FLSA, 29 U.S.C. §§ 206(a), 207(a).  Plaintiff contends that Defendants NLG and The Navigator

School are enterprises engaged in commerce or in the production of goods for commerce under the

FLSA.  Doc. No. 91 ¶ 3.  In order for employers to be required to pay overtime compensation,

employees must be "engaged in commerce or in the production of goods for commerce, or . . .

employed in an enterprise engaged in commerce." 29 U.S.C. § 207(a)(1).  An enterprise such as NLG

or The Navigator School[11], if operating an elementary school, qualifies as an enterprise subject to the

requirements of the FLSA under the plain language of the Act.  29 U.S.C. § 203(r)(2)(A) (defining

"enterprise" as including activities performed for a "common business purpose" in connection with

the operation of a preschool, elementary or secondary school, whether such school is operated for

profit or not for profit); *see Kitchings v. Florida United Methodist Children's Home, Inc.,* 393

F.Supp.2d 1282, 1293 n.27 (M.D. Fla. 2005) (determination of enterprise coverage must be resolved

on the facts of each case but it is a question of law).

The employee bringing suit for overtime wages under the FLSA has the burden of proving that

she performed work for which she was not properly compensated.  *Anderson v. Mt. Clemens Pottery*

*Co.*, 328 U.S. 680, 687 (1946) (superceded on other grounds by the Portal to Portal Act).  Where the

employer's time and pay records are inadequate or nonexistent, the employee may satisfy her burden

---

[11]It is not clear that Plaintiff has sued the proper entity responsible for operating the School, as discussed in detail below.

-6-

by proving that she has in fact performed work for which she was improperly compensated.  Once the employees produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employees' evidence.  *Id*. at 687-88.

An employer subject to the FLSA must pay "each of his employees who . . . is engaged in commerce or in the production of goods for commerce . . . [the minimum wage]."  29 U.S.C. § 206(a)(1).  Such an employer must also pay one and one-half times the employee's regular rate for all hours worked in excess of forty hours per work week.  29 U.S.C. § 207(a).  Plaintiff bears the burden of proving by a preponderance of the evidence: 1) the existence of an employment relationship; 2) that she was an employee engaged in commerce or employed by an "enterprise" engaged in commerce; 3) that Defendants failed to pay her the minimum wage and overtime required by the FLSA; and 4) she is owed the amount claimed by a just and reasonable inference.  *See* 29 U.S.C. §§ 206(a), 207(a); *see also* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) at 143-46 (2005).

In this case, central to liability under the FLSA is a determination of the entity or individuals who actually "employed" Plaintiff.  It is undisputed that TNLC owned and operated the School where Plaintiff alleges she was employed for the time period in dispute, from February 2003 to September 2004.  The parties stipulated in the state court action[12] that TNLC had operated the school since February 7, 2003.  Def. Ex. 2.  However, Plaintiff has *not* sued TNLC (of which she is a partial

---

[12]In a Stipulated Judgment in the state court, the parties stipulated that Amy and Craig Paulshock are shareholders of The Navigator Learning Center, Inc., which has operated the School since February 7, 2003.  *See* Doc. No. 65 at 9.

owner) as a Defendant in the case; thus, Plaintiff's claims for wages from February 2003 to September 2004 must fail.

For similar reasons, Kent Neilson does not qualify as a statutory employer under the FLSA during the time period – February 2003 to September 2004 – that TNLC owned the school because he lacked any day-to-day control of Plaintiff's conditions of employment.  Plaintiff bears the burden of proving the employment relationship since she seeks to hold Kent Neilson personally liable as her "employer" under the FLSA..  The Eleventh Circuit has explained that in applying the "economic reality test" to determine whether a particular defendant was an "employer" within the meaning of the FLSA, the Court may look at several factors, including whether the alleged employer: 1) had the power to hire and fire the employees; 2) supervised and controlled the employees' work schedules or conditions of employment; 3) determined the rate and method of payment; and 4) maintained employment records. *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).  Corporate officers with "significant operational control of a corporation's day-to-day operations, including compensation of employees," are employers within the meaning of the FLSA. *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986); *Michaud v. U.S. Steakhouse Bar and Grill, Inc.*, 2007 WL 2572197, *5 (Sep. 5, 2007).  The Eleventh Circuit has further stated: "To be personally liable, an officer must be either involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638.

The undisputed testimony was that Kent Neilson was rarely physically present at the location, he was responsible for the information technology or computer work, and salary amounts were recommended by the Principal, Altha Neilson.  The testimony showed that Plaintiff asked Altha Neilson, not Kent Neilson, about getting paid.  It is undisputed that the parties – including TNLC shareholders Plaintiff and her husband – cooperatively owned and operated the school until September

-8-

2004, when they were negotiating sale of ownership to the Neilsons.  The evidence at trial showed that management decisions were made by the TNLC owners physically present in Celebration (Altha Neilson, Plaintiff, and Craig Paulshock) who would then would conference call to Kent Neilson in Canada.  The Court finds credible Kent Neilson's testimony that he did not fire Plaintiff in September 2004, but she voluntarily ceased her activities when negotiations fell apart.  Moreover, the parties stipulated in the state court action that TNLC – jointly owned by the Paulshocks and Neilsons – had operated the school since February 7, 2003.  Def. Ex. 2.  As Dr. Paulshock testified that, although he and Plaintiff collectively owned only 33% of TNLC on paper, the documents (not introduced at trial) were written such that a 70% majority vote was required, so that the Paulshocks thus could "veto" any management decisions with their 33% interest.  Plaintiff not only had a stake in TNLC, she shared a veto power with her husband such that management decisions and control of the School could not be made without her assent.  Therefore, the Court finds that Kent Neilson lacked the day to day control of TNLC and the Navigator School and was not an "employer" for purposes of the FLSA from February 2003 to September 2004; thus, he is not liable for Plaintiff's unpaid wages or overtime during that time.

Because the Court finds that Defendants have no liability to Plaintiff as described above, the Court need not reach Defendants' defenses that Plaintiff is subject to certain FLSA exemptions or a set-off for health care premiums and free tuition.

## CONCLUSION

Based on the testimony at trial and the other evidence presented, the Court renders a verdict that Plaintiff take nothing against Defendants Nnovation Learning Group, Inc., the Navigator School, Inc., and Kent R. Neilson.  The Court finds Plaintiff's settlement with Altha Neilson (filed the morning of trial – Doc. No. 98) is a "fair and reasonable resolution of a bona fide dispute" over FLSA

issues, given the paucity of Plaintiff's claims.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

      **DONE** and **ORDERED** in Orlando, Florida on January 7, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties